OPINION
{¶ 1} Paris O. Simpson appeals from his conviction and sentence in Montgomery County Common Pleas Court on charges of felonious assault, aggravated robbery, and murder.
 {¶ 2} Simpson advances seven assignments of error on appeal. First, he contends the trial court deprived him of a fair trial by admitting unduly prejudicial pictures into evidence. Second, he asserts that he received constitutionally ineffective assistance of trial counsel. Third, he argues that the trial court erred by failing to declare a mistrial and allowing a key witness to testify over his objection. Fourth, he claims prosecutorial misconduct deprived him of a fair trial. Fifth, he alleges that the trial court erred in failing to suppress his pretrial statements. Sixth, he contends the trial court made improper evidentiary rulings that deprived him of a fair trial. Seventh, he asserts that the cumulative effect of the foregoing errors deprived him of a fair trial.
 {¶ 3} The record reflects that police arrested Paris Simpson and his brother, Dominic, after stopping them in a stolen vehicle on March 27, 2002. At the time of the arrest, police learned that Dominic was wanted on an outstanding warrant for felonious assault. They also discovered that Paris Simpson was wanted on a felonious assault warrant and that he was a suspect in a homicide investigation. The brothers ultimately both were charged with felonious assault, aggravated robbery, and murder. The felonious assault charge stemmed from a severe beating that the brothers had administered to fifty-seven-year-old Paul Camp on March 18, 2002. The aggravated robbery and murder charges stemmed from a fatal beating that they had administered to an individual named Jerald Turner and the theft of Turner's wallet in the course of the beating.
 {¶ 4} Following his indictment, Dominic pleaded guilty to the foregoing charges and received an aggregate sentence of nineteen years to life in prison. Paris Simpson proceeded to trial before a jury in January and February, 2003. The State's evidence included testimony from several eyewitnesses to the beatings of Paul Camp and Jerald Turner. On February 5, 2003, the jury convicted Simpson on all three counts. The trial court imposed consecutive sentences totaling thirty-three years to life in prison. This timely appeal followed.
 {¶ 5} In his first assignment of error, Simpson contends the trial court deprived him of a fair trial by admitting unduly prejudicial pictures into evidence. In particular, he argues that repetitive and/or gruesome photographs of Turner should not have been admitted because their probative value was substantially outweighed by their prejudicial impact. Simpson objected to most of the photographs, but the trial court admitted them anyway.
 {¶ 6} When considering the admissibility of photographs, a trial court must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. State v. Morales (1987),32 Ohio St.3d 252, 257. The admission or exclusion of photographs is left to the sound discretion of the trial court. Id. Thus, an appellate court reviews a decision on the admissibility of such evidence for an abuse of discretion.
 {¶ 7} In the present case, Simpson argues that the trial court erred in admitting pictures identified as State's exhibits 13, 15, 17, 19, 20, 26, 29, and 30. Exhibit 13 was an identification photo that showed Jerald Turner as he was received at the coroner's office. Simpson did not object to the picture, and we find no plain error in its admission. Exhibit 15 was a picture of Turner's mouth. Simpson objected to it on the basis that it was cumulative. The trial court overruled the objection, finding that exhibit 15 offered a more "particularized" view of the mouth than other photos. We find no abuse of discretion. Exhibit 17 depicted the right side of Turner's shaved head. Simpson objected on the basis that exhibit 17 was cumulative, insofar as exhibit 16 also showed Turner's head. The trial court overruled the objection, noting that exhibit 17 showed injuries under the hair, whereas exhibit 16 did not. We find no abuse of discretion. Exhibit 19 showed the right, back portion of Turner's head. Simpson did not object to this picture, and we find no plain error in its admission. Exhibit 20 was another picture of Turner's head. Simpson objected to it on the basis that it was duplicative of exhibit 19. The trial court overruled the objection, finding that the picture provided "a more detailed explanation" of the injuries. The trial court also found that exhibit 20 was not "unduly prejudicial." Upon review, we find no abuse of discretion. Exhibit 20 offered a different perspective than exhibit 19 as it was taken from a greater distance and revealed injuries not visible in exhibit 19. Cf. State v. Reed,
Montgomery App. Nos. 18417, 18448, 2001-Ohio-1537 (suggesting that multiple pictures may be admitted when they involve "different levels of focus"). Exhibit 26 depicted the left side of Turner's skull. Simpson objected to it on the basis that it was cumulative and was more prejudicial than probative. The trial court overruled the objection, finding that it provided a "different view" than other pictures. Again, we find no abuse of discretion. Whereas exhibit 25 showed the right side of Turner's skull, exhibit 26 showed the left side and, therefore, depicted different injuries. Exhibit 29 was a picture of the inside of the top of Turner's skull, and it showed epidural bleeding. Simpson objected on the basis that it was duplicative of pictures of the left and right sides of the skull. The trial court overruled the objection, and we find no abuse of discretion. The injury shown by exhibit 29 was not apparent in other pictures. Exhibit 30 showed bleeding of the brain. Simpson objected on the basis that it was particularly gory and duplicative of other pictures. The trial court overruled the objection, noting that the picture was "different" than others and was as "clinical" as possible. Upon review, we find no abuse of discretion. The subdural bleeding of the brain depicted in exhibit 30 was an additional injury that the State was entitled to prove, and it was not apparent in other photographs.
 {¶ 8} In short, the pictures at issue were probative because they assisted the State in explaining Turner's death, and they illustrated the location and severity of the blows to his head. Although a number of photographs were admitted, they each had independent probative value, and we cannot say that the probative value of the pictures was substantially outweighed by the danger of unfair prejudice to Simpson. As a result, the trial court did not abuse its discretion in admitting the photographs. Simpson's first assignment of error is overruled.
 {¶ 9} In his third assignment of error,[1] Simpson argues that the trial court erred by failing to declare a mistrial and allowing a key witness to testify over his objection. This argument concerns the State's tardy identification of fifteen-year-old Maneshia Ray as a prosecution witness. The record reflects that the State identified Ray as a witness on the morning of January 23, 2003, one day after the trial court's January 22, 2003, deadline for exchanging witness lists. Defense counsel then attempted to contact Ray several times before trial, but she declined to speak with him.
 {¶ 10} At trial, Simpson moved to preclude Ray from testifying based on the State's one-day delay in disclosing her as a potential witness. The trial court overruled the motion, finding that the State had acted diligently and reasonably in disclosing Ray's name and contact information as soon as she became known to investigators. The trial court also found no prejudice as a result of the one-day delay, noting that defense counsel made several attempts to contact Ray after her identify was disclosed, and that Ray had not returned his calls or responded to business cards left at her address. In an abundance of caution, however, the trial court allowed defense counsel one more attempt to speak with Ray. The trial court's bailiff met her in the hallway prior to her testimony and asked whether she wished to speak to defense counsel. Ray responded that she did not want to talk to him.
 {¶ 11} Ray then testified at trial and gave an eye-witness account of the beatings that Paris and Dominic Simpson had administered to Paul Camp and Jerald Turner. Following Ray's testimony, defense counsel moved for a mistrial, arguing that the State's tardy disclosure of her identity had prejudiced Simpson. In particular, defense counsel argued that the substance of her testimony was a surprise and that it destroyed the defense theory of the case. The trial court overruled the motion, finding once again that the State disclosed Ray as a witness as soon as possible. Although the trial court recognized that Ray's testimony itself was prejudicial, the trial court found no prejudice caused by the State's one-day delay in disclosing her as a potential witness. The trial court also noted that Ray's testimony, while prejudicial to Simpson, merely corroborated the testimony of other eyewitnesses.
 {¶ 12} Upon review, we find no error in the trial court's decision to allow Ray to testify or in its decision to overrule Simpson's motion for a mistrial. In State v. Martin (Dec. 6, 1996), Montgomery App. No. 15615, we recognized that sanctions are not appropriate when the State demonstrates excusable failure to comply with time requirements regarding the disclosure of prospective witnesses. In that case, the State discovered the existence of a witness during trial. The prosecuting attorney promptly notified defense counsel and the trial court. Over an objection that the witness had not been timely disclosed, the trial court allowed the witness to testify. Upon review, we found no error in that decision, reasoning that the prosecuting attorney could not have identified the individual as a prospective witness earlier because the prosecutor was unaware of him. We also noted that the prosecuting attorney complied with the continuing duty to disclose imposed by Crim.R. 16(D) by promptly notifying defense counsel and the trial court of the newly discovered evidence and his intent to use it.
 {¶ 13} As in Martin, the record in the present case supports the trial court's conclusion that the State had good cause for disclosing Ray as a prospective witness one day late. The record also supports the trial court's conclusion that Simpson suffered no prejudice as a result of the one-day delay. After learning that the State anticipated calling Ray as a witness, defense counsel made several unsuccessful attempts to speak with her. Ray also affirmed at trial that she has no desire to speak with defense counsel. Nothing in the record suggests that she would have been willing to do so if her name had been disclosed on January 22, 2003, rather than one day later. Finally, the substance of Ray's trial testimony provided no basis for a mistrial. We agree with Simpson's assertion that her testimony was prejudicial to his defense, insofar as she provided seemingly credible corroboration of other eyewitness accounts. The State's one-day delay in disclosing her identity, however, had no impact on the substance of her testimony, which would have been equally prejudicial if her name had been disclosed on January 22, 2003. According, we overrule Simpson's third assignment of error.
 {¶ 14} In his second assignment of error, Simpson asserts that he received constitutionally ineffective assistance of trial counsel. Such claims are assessed against the two-part test ofStrickland v. Washington (1984), 466 U.S. 668. As stated inState v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448: "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential."Strickland, supra, at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Bradley (1989),42 Ohio St.3d 136, 142. A court must presume that numerous choices, perhaps even disastrous ones, are made on the basis of a tactical decision and do not constitute ineffective assistance of counsel. State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citing Bradley, supra, at 144.
 {¶ 15} In this case, Simpson first argues that his attorney provided ineffective assistance by failing to request a continuance, failing to investigate the case fully, and failing to prepare a reasonable defense. These assertions all involve the State's identification of Maneshia Ray as a witness one day late and her subsequent testimony at trial. Simpson insists that his attorney should have requested a continuance after the trial court's bailiff indicated that Ray did not want to speak to defense counsel. Simpson reasons that a continuance would have given defense counsel additional time to attempt to persuade Ray to talk to him. He also argues that a continuance would have given his attorney more time to "investigate" the case, to "reformulate" the defense, and to seek a plea bargain.
 {¶ 16} Upon review, we find no ineffective assistance of counsel on the foregoing grounds. Defense counsel explained at trial that he was not requesting a continuance because he believed additional efforts to persuade Ray to speak with him would be futile. This conclusion was reasonable given that Ray had ignored business cards left at her residence, had failed to return his calls, and had informed the bailiff that she did not want to speak to defense counsel. In addition, Simpson has not shown that a continuance would have enabled defense counsel to prepare a viable defense or that the State even had an interest in pursuing a plea bargain.
 {¶ 17} Simpson next argues that his attorney provided ineffective assistance by failing to file a motion in limine to preclude the introduction of "other acts" evidence. In particular, he contends defense counsel should have sought to preclude evidence concerning his involvement in drug trafficking, his criminal record, and the fact that he was a passenger in a stolen car that was stopped for failing to pay for gasoline. Simpson contends that evidence on the foregoing issues was unrelated to the charges against him and that such evidence invited the jury to speculate that he was a person of bad character.
 {¶ 18} We find the foregoing argument to be unpersuasive. With regard to Simpson's
 {¶ 19} involvement in drug trafficking and his criminal record, we note that almost all of the specific testimony about which he now objects was elicited by his own attorney. The State merely elicited testimony from Paul Camp, the felonious assault victim, regarding Simpson's offer to sell him drugs immediately prior to the assault. This testimony was not objectionable because it helped to establish the setting of the case. State v.Wilkinson (1980), 64 Ohio St.2d 308, 317. Likewise, the testimony elicited by defense counsel pertained to Simpson's drug-related activities near the time of the beatings. As a result, that testimony helped to establish the setting of the case and to explain Simpson's actions.
 {¶ 20} Defense counsel also elicited an admission from Simpson that he had a recent felony conviction for possession of crack cocaine. Counsel's inquiry regarding this conviction was a reasonable tactical decision. Given that evidence of the conviction appears to have been admissible under Evid.R. 609(A), defense counsel reasonably may have chosen to be forthright with the jury by raising the issue himself rather than allowing the State to do so.
 {¶ 21} On cross examination, the prosecutor also asked Simpson a few questions about his drug dealing. Given that defense counsel had discussed the issue on direct examination, we find nothing objectionable about the prosecutor's follow-up questions. We note too that defense counsel mentioned Simpson's drug dealing again in closing arguments. He did so, however, in order to suggest a motive for the State's eyewitnesses to fabricate their testimony. In particular, defense counsel suggested that members of Simpson's neighborhood may have wanted him imprisoned so someone else could take over the profitable drug dealing business that he had. Therefore, they lied about what they saw on the day in question. In light of this defense theory, Simpson's attorney did not provide deficient representation by eliciting testimony about drug dealing.
 {¶ 22} We also find that testimony about the gas drive-off and Simpson's identification as a passenger in a stolen vehicle driven by his brother Dominic was relevant because it helped to explain the sequence of events culminating in his apprehension and arrest. At a minimum, defense counsel reasonably could have reached such a conclusion. As a result, counsel did not provide deficient representation by failing to seek preclusion of this background information.
 {¶ 23} Simpson next argues that his attorney provided ineffective assistance by conceding his guilt on the felonious assault charge. This argument concerns defense counsel's comments during closing argument that Simpson (1) "more or less admits the offense of felonious assault," (3) "admitted to you that he set Mr. Camp up," and (3) "admitted to you that he kicked Mr. Camp." Similarly, defense counsel told the jury, "I'm not going to argue that after my client went up there, and told the truth and told you that he set Mr. Camp up that it's not aiding and abetting. I'm not going to be so ridiculous as to make that argument to you." Simpson reasons that he never directly admitted guilt to the felonious assault charge, and that these statements by his attorney constituted inappropriate admissions of guilt.
 {¶ 24} We find no merit in Simpson's argument. "Concessions of guilt by defense counsel must be considered on a case-by-case basis. All of the facts, circumstances, and evidence must be considered." State v. Goodwin, 84 Ohio St.3d 331, 338,1999-Ohio-356. When defense counsel concedes his client's guilt to a charge in an effort to enhance credibility by being candid and realistic with the jury, such a decision may be construed as tactical or strategic and, therefore, does not constitute ineffective assistance of counsel. Id. at 338-339.
 {¶ 25} Having reviewed the entire trial transcript, we conclude that the concessions made by defense counsel regarding the felonious assault charge were reasonable in light of the evidence. In his testimony, Simpson effectively conceded participation in the felonious assault. As noted by defense counsel, Simpson admitted kicking Camp and also setting him up for additional blows struck by his brother Dominic. The defense strategy appears to have been to concede Simpson's guilt on the felonious assault charge in order to preserve his credibility to contest the charges of murder and aggravated robbery involving victim Jerald Turner. As to those charges, defense counsel mounted a vigorous defense despite the strong evidence presented by the State. Thus, we conclude that defense counsel's admission of Simpson's guilt on the felonious assault charge was a reasonable strategic decision and did not constitute deficient representation.
 {¶ 26} Finally, Simpson argues that his attorney provided ineffective assistance by failing to object to improper questions and prosecutorial comments. In particular, he contends that defense counsel should have objected to (1) a question about whether Dominic Simpson had "selective hearing," (2) a question about whether the Simpson brothers would use "muscle" to remove rival drug dealers from their territory, (3) a question about whether Paris Simpson had chosen to live a lifestyle of using muscle, (4) the prosecutor's comments about the viciousness and brutality of the attacks at issue, (5) the prosecutor calling Dominic Simpson a liar in closing arguments, and (6) the prosecutor asking leading questions.
 {¶ 27} Upon review, we find no ineffective assistance of counsel based on the lack of an objection to the foregoing questions and comments. The question about Dominic Simpson having "selective hearing" was within the bounds of permissible cross examination. During direct examination, Dominic recounted a conversation that he had heard between defendant Simpson and Paul Camp. Despite being able to recall the substance of the conversation on direct examination, Dominic denied on cross examination that he had heard the defendant ask whether Camp was "looking" for drugs, that the defendant had told Camp not to "get smart," or that Camp had asked the defendant to "stay away." In response, the prosecutor asked Dominic whether he had "selective hearing." Dominic then suggested that he may not have heard those things because he had "walked away." We find nothing particularly objectionable about the exchange between the prosecutor and Dominic Simpson.
 {¶ 28} We also find nothing particularly objectionable about the prosecutor's question as to whether the Simpson brothers would use "muscle" to remove rival drug dealers from their territory or whether Paris Simpson had chosen to live a lifestyle of using muscle. Defense counsel opened up this line of inquiry on direct examination when Simpson explained that he sold drugs and that he did not allow anyone else to come into his territory. The prosecutor's questions constituted permissible follow-up.
 {¶ 29} We likewise find no basis for an objection to the prosecutor's statements about the viciousness and brutality of the attacks. The remarks, which occurred in opening statements and closing arguments, constituted fair comments on the nature of the crimes and were supported by the evidence.
 {¶ 30} As for Simpson's argument that the prosecutor improperly called his brother Dominic a liar, the record does not support the claim. The prosecutor did not express a personal belief that Dominic Simpson was a liar. Rather, the prosecutor merely identified reasons why Dominic had a motive to lie. The prosecutor then argued that the defendant himself had depicted Dominic as a liar, insofar as Dominic testified that someone named "Tadpole" had removed victim Turner's pants after the assault, whereas the defendant testified that Dominic had removed the pants.
 {¶ 31} We also find no ineffective assistance of counsel based on the lack of objections to leading questions by the prosecutor. Although Simpson has identified a few isolated leading questions, most of the questions were not improper because they directed the witness's attention to a particular topic but did not suggest a desired answer. See, e.g., State v.D'Ambrosio, 67 Ohio St.3d 185, 190, 1993-Ohio-170. With regard to the other questions, we find no resulting prejudice. Simpson has identified only a few questions that were leading, and the prosecutor easily could have rephrased them if defense counsel had objected. Accordingly, we overrule Simpson's second assignment of error.
 {¶ 32} In his fourth assignment of error, Simpson claims prosecutorial misconduct deprived him of a fair trial. In particular, he asserts that the prosecutor made comments and asked questions that were inappropriate. First, he challenges the prosecutor's introduction of testimony about Jerald Turner's cause of death. Simpson contends this testimony was improper because his attorney had stipulated to the cause of death. We disagree. Although the defense offered a stipulation, the State was not obligated to accept it. State v. Free (Feb. 13, 1998), Montgomery App. No. 15901. We note too that defense counsel did not object to the testimony, and we find no plain error.
 {¶ 33} Simpson next alleges prosecutorial misconduct based on the State's failure to "adhere to the discovery rules." This argument concerns the State's late disclosure of Maneshia Ray as a potential witness. For the same reasons fully set forth, supra, we conclude that the prosecutor disclosed Ray's identity as soon as possible, and we find no misconduct.
 {¶ 34} Simpson also alleges prosecutorial misconduct based on the following exchange between the prosecutor and Dominic Simpson on cross examination:
 {¶ 35} "Q: Now Jerald Turner can't come in to court and give his version of what happened, can he?
 {¶ 36} "[Defense Counsel]: Objection.
 {¶ 37} "The Court: Sustained.
 {¶ 38} "Q: Jerald Turner is what?
 {¶ 39} "A: Dead.
 {¶ 40} "Q: He's dead?
 {¶ 41} "A. Yep.
 {¶ 42} "Q: So, he can't be a witness in this case now, can he?
 {¶ 43} "A: No.
 {¶ 44} "[Defense counsel]: Objection.
 {¶ 45} "The Court: Overruled."
 {¶ 46} Although Simpson cites the foregoing questions as examples of prosecutorial misconduct, he fails to identify what in particular is improper about them. Upon review, we find no misconduct by the prosecutor and no prejudice to the defense.
 {¶ 47} Simpson next alleges that the prosecutor improperly impugned his credibility. In support, he cites the following exchange with the prosecutor on cross examination:
 {¶ 48} "Q: You are saying [Jerald Turner's] shoe came off somehow different?
 {¶ 49} "A: Yes, I do.
 {¶ 50} "Q: And that is the version you want the jury to believe?
 {¶ 51} "A: Yes, I do."
 {¶ 52} Upon review, we find nothing improper about the foregoing questions. Simpson's version of events largely contradicted the testimony of the State's witnesses, and the prosecutor was entitled to engage in such questioning on cross examination.
 {¶ 53} Simpson also cites as misconduct the prosecutor's references to the viciousness and brutality of the crimes in opening statements and closing arguments. As we explained, supra, the remarks constituted fair comments on the nature of the crimes and were supported by the evidence. We likewise find no merit in Simpson's argument that the prosecutor engaged in misconduct by calling his brother Dominic a "liar," by asking Dominic if he had "selective hearing," or by questioning the defendant about using "muscle" to remove rival drug dealers from their territory. For the reasons set forth, supra, we do not agree that the prosecutor called Dominic a liar, and we find nothing improper about the other questions.
 {¶ 54} Finally, Simpson alleges prosecutorial misconduct based on the prosecutor's inaccurate recollection of his testimony during closing arguments. In particular, Simpson contends the prosecutor misrepresented his testimony as follows: "And he tells you, you know, I lied to the police because I kind of incriminated myself and I told them about stealing something." In reality, Simpson stated on direct examination that he told detectives "there never was anything stolen." Upon review, we find no misconduct based on the prosecutor's misstatement. The mistake appears to have been inadvertent, the trial court told the jury that closing arguments were not evidence, and, viewing the record as a whole, the isolated misstatement did not deprive Simpson of a fair trial. Accordingly, we overrule his fourth assignment of error.
 {¶ 55} In his fifth assignment of error, Simpson alleges that the trial court erred in overruling his motion to suppress statements he made at the Dayton police station following his arrest. He insists that the statements, which included a confession, were involuntary. In support, Simpson argues only that his interview with police began at 5:32 a.m. and that the record fails to reveal any inquiry by police into when he last had eaten or slept.
 {¶ 56} Upon review, we find Simpson's argument unpersuasive. "A court, in determining whether a confession is involuntary, `should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" State v. Brooks, 75 Ohio St.3d 148,154, 1996-Ohio-134.
 {¶ 57} In the present case, Simpson fails to address most of the foregoing factors. As noted above, his only argument is that police failed to inquire when he last had eaten or slept. This allegation perhaps fits within the concept of physical deprivation or mistreatment. Notably, however, Simpson does not allege that police actually deprived him of anything or mistreated him in any way. In particular, he does not contend that he asked for food or told police that he was too tired to participate in an interrogation. Nor does he contend that police denied him food or sleep in order to coerce a confession. Rather, he argues only that police failed to inquire into whether he was hungry or sleepy before beginning to question him.
 {¶ 58} In our view, a failure to ask when Simpson last had eaten or slept could not possibly have rendered his subsequent confession involuntary absent any evidence to suggest that he was hungry or excessively tired at the time of his interview. We note too that the State did not introduce any evidence of Simpson's confession at trial. As a result, he could not have been prejudiced by the trial court's denial of his motion to suppress. His fifth assignment of error is overruled.
 {¶ 59} In his sixth assignment of error, Simpson contends the trial court made improper evidentiary rulings that deprived him of a fair trial. In support, he first argues that the trial court permitted questions that had been asked and answered and allowed the prosecutor to ask leading questions. In his brief, however, Simpson cites only one example of a question that already had been asked and answered. In response to questioning by the prosecutor, Maneshia Ray testified that she saw Simpson kick one of the victims in the head. Immediately after this testimony, the prosecutor again asked
 {¶ 60} whether Ray had seen "the defendant kicking this man." Defense counsel objected, but the trial court overruled the objection and Ray responded affirmatively. Upon review, it appears that the prosecutor's final question about Ray seeing Simpson kick the victim indeed had been asked and answered. Having reviewed the entire record, however, we are convinced, beyond a reasonable doubt, that any error in the trial court allowing Ray to answer this question a second time had absolutely no bearing on the outcome of the trial and was harmless.
 {¶ 61} With regard to the issue of leading questions, Simpson cites only one example in connection with this assignment of error. In particular, he cites the prosecutor's inquiry to Maneshia Ray, "Do you remember seeing anything on the Defendant's, Paris's, jeans?" The trial court overruled a "leading" objection to this question. Nevertheless, the prosecutor voluntarily rephrased the question, and defense counsel did not object to the question as rephrased. Upon review, we conclude that the original question was not impermissibly leading. Although the question directed Ray's attention to a particular topic, it did not suggest a desired answer. In any event, the prosecutor rephrased the question before Ray could answer it, thereby rendering Simpson's argument moot.
 {¶ 62} Simpson next argues that the trial court erred in sustaining an objection to a question defense counsel posed to Andrea Minyard, an expert witness for the State. Specifically, defense counsel asked, "If you had knowledge that someone had used cocaine and observed an aggressive reaction, would that be consistent in many cases with use of cocaine?" The State objected on the basis that the question exceeded the scope of Minyard's expertise, and the trial court sustained the objection. Upon review, we find no abuse of discretion. Prior to the question at issue, Minyard testified that she had worked as a medical examiner and a deputy coroner. She also testified that she could not say how a drug such as cocaine (which was found in Jerald Turner's system) would affect an individual or whether it would make him more active or less active. In light of this testimony, the trial court acted within its discretion in precluding her from answering the question posed by defense counsel.
 {¶ 63} Simpson next contends the trial court erred in overruling his objection to the prosecutor's statement in closing arguments that defense counsel had the same subpoena power as the State and could have subpoenaed witnesses to bring certain physical evidence into the courtroom. This argument concerns the prosecutor's rebuttal to defense counsel's closing argument.
 {¶ 64} Arguing on behalf of Simpson, defense counsel stated: "There's testimony that when the Simpsons got arrested on the 27th, Dominic told you how the police took all his clothes, and for whatever reason, they took his boots. And they took his pants. The technology exists to analyze those. But [there are] no boots and pants. Where are those sneakers that they allegedly saw that were spattered with blood? Paris had boots on that night. But where is the physical evidence?" In response to this argument, the prosecutor stated: "Then [defense counsel] says, well, where is the shoe? Or where's the clothing. You know, he forgets to tell you something that kind of changes that one-hundred and eighty degrees. He has the same subpoena power here that I do. If he wanted those items to come into court here, he could've subpoenaed them into the courtroom."
 {¶ 65} On appeal, Simpson contends that the prosecutor's remarks improperly shifted the burden of proof to him. We disagree. In State v. Clemons, 82 Ohio St.3d 438, 452,1998-Ohio-406, the Ohio Supreme Court recognized that the prosecution is entitled to comment on defense counsel's failure to offer evidence or to call witnesses other than the defendant. See also D'Ambrosio, 67 Ohio St.3d at 193; State v. Leach,150 Ohio App.3d 567, 584, 2002-Ohio-6654. We note too that the prosecutor expressly reminded the jury that the State bore the burden of proof and the trial court did likewise. As a result, we reject Simpson's argument that the trial court permitted the State to shift the burden of proof to him.
 {¶ 66} Finally, Simpson asserts that the trial court erred in allowing the State to misrepresent his testimony during closing arguments. This argument concerns the prosecutor's claim that Simpson had admitted to police that he stole something. As we explained, supra, Simpson actually stated on direct examination that he told detectives "there never was anything stolen." Although the trial court erred in overruling an objection to the misstatement, we remain convinced, beyond a reasonable doubt, that this isolated error had no effect on the outcome of Simpson's trial and was harmless. Accordingly, we overrule Simpson's sixth assignment of error.
 {¶ 67} In his seventh assignment of error, Simpson argues that even if the errors he has alleged herein were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas,
Clark App. No. 2000-CA-43, 2001-Ohio-1353. In our review of Simpson's other arguments, we found no prejudicial error and, at most, isolated incidents of harmless error. Even considered cumulatively, we find no reasonable probability that any incidents of harmless error altered the outcome of Simpson's trial. Accordingly, we overrule his seventh assignment of error.
 {¶ 68} Having overruled each of Simpson's assignments of error, we hereby affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Grady, J., and Young, J., concur.
[1] We will address Simpson's third assignment of error next because doing so best facilitates our appellate review.