DECISION AND JUDGMENT ENTRY
{¶ 1} Catherine Eppard appeals from her conviction and sentence in Lucas County Common Pleas Court on one count of grand theft.
 {¶ 2} Eppard advances six assignments of error on appeal. First, she challenges the legal sufficiency of the evidence to support her conviction. Second, she contends her *Page 2 
conviction is against the manifest weight of the evidence. Third, she claims the trial court erred in denying her request for funds to retain a forensic accountant. Fourth, she argues that she received constitutionally ineffective assistance of trial counsel. Fifth, she asserts that the trial court made erroneous evidentiary rulings that cumulatively deprived her of a fair trial. Sixth, she argues that prosecutorial misconduct deprived her of a fair trial.
 {¶ 3} The present appeal stems from Eppard's work as treasurer for the Maumee Little League. On March 23, 2004, the Lucas County prosecutor indicted Eppard and her husband Mark, who served as the Little League president, on multiple counts of grand theft for allegedly stealing money from the organization. Eppard allegedly carried out the theft by making unauthorized payments to herself and her husband from the Little League checking account. The matter proceeded to trial in July 2005 on two counts of grand theft, one against Eppard and one against her husband.
 {¶ 4} The State's evidence at trial included, among other things, a number of checks that Eppard had written from the Little League checkbook made payable to herself, her husband, or cash. The State presented evidence that the funds, which far exceeded the Eppards' proper compensation for maintaining ball fields and stocking concession stands, were deposited into their personal account. Eppard was unable to produce any receipts or other documentation showing that she and her husband were entitled to the funds as payment for work performed or as reimbursement for expenses. Eppard testified in her defense and insisted that she had turned all of her receipts and other paperwork over to the Little League. The jury convicted her of grand theft in violation of R.C. § 2913.02, finding *Page 3 
that she had stolen between $5,000 and $100,000 from the Maumee Little League. Her husband was acquitted on an identical charge. The trial court subsequently sentenced Eppard to 30 days in jail, placed her on five years of community control, required her to pay restitution of $14,976, and ordered her to perform 500 hours of community service. This timely appeal followed.
 {¶ 5} In her first assignment of error, Eppard claims her conviction is based on legally insufficient evidence. In support, she contends the State failed to present any competent, credible evidence that she acted with the purpose to deprive the Little League of property or any evidence as to the value of such property.
 {¶ 6} Upon review, we find no merit in Eppard's arguments. When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v. Hawn (2000),138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 7} To convict Eppard of grand theft, the jury was required to find that she, *Page 4 
acting with the purpose to deprive the Maumee Little League of property, knowingly obtained control over property beyond the scope of the express or implied consent of the Little League, and that the value of the property was between $5,000 and $100,000. R.C. § 2913.02(A)(2) (B)(2). Upon review, we believe the record contains sufficient evidence for the jury to have found these elements proven beyond a reasonable doubt.
 {¶ 8} The record reflects that Eppard wrote numerous checks payable to herself, her husband, or cash from the Little League account. On January 23, 2003, she wrote two separate $1,500 checks — one payable to herself and one payable to her husband. Eppard testified that these two checks, which were numbered 967 and 968, represented her and her husband's full compensation for their field maintenance and concessions work.
 {¶ 9} Shortly thereafter, however, on February 12, 2003, Eppard skipped forward more than 500 checks and wrote check number 1502 for $1,500 payable to cash. On March 12, 2003, she wrote check number 1501 for $2,000 payable to herself. On March 29, 2003, she wrote check number 1497 for $3,000 payable to herself and her husband. Finally, on April 4, 2003, she wrote check number 1498 for $2,000 payable to her husband.
 {¶ 10} With regard to check number 1502 for $1500 made payable to cash, the record reflects that Eppard cashed the check on February 13, 2003, at 11:53 a.m. and then deposited $1,500 into her own bank account at 12:07 p.m. Eppard testified that after placing the money in her own account, she gave it to Little League representative Dave Theaker for "umpire initiation fees." After the prosecutor pointed out that her own bank *Page 5 
statements showed no corresponding debit for $1,500, Eppard stated that she would be able to explain if she had her missing "receipts." She then pointed to a $2,074 Western Union debit from her bank account and suggested that it went to Theaker. When the prosecutor observed that the $2,074 actually went to Mastercard, Eppard opined that she may have used Mastercard to pay Theaker the $1,500.
 {¶ 11} With regard to check number 1501 for $2,000 made payable to Eppard, the State presented evidence that it had been altered. Eppard originally wrote the check payable to herself and cashed it. The memo line of that check read "for Mark Cathy." In the altered version of check number 1501, the "pay to the order of" line had been changed to "Cash," and the memo line read "for umpire money." Eppard asserted that she did not make the alterations after cashing the check. She also insisted that she had been entitled to the money, but she could not recall why she had received it. Her only explanation was that she had purchased "many items" for the Little League and that she needed missing receipts to verify her right to the money.
 {¶ 12} The State also presented evidence that check number 1498 for $2,000 made payable to Eppard's husband had been altered. The memo line of the check that Eppard's husband cashed read "1500 fields + 500 concession." Eppard admitted at trial, however, that her husband had not been entitled to any fields or concession money on that date. In the altered version of check number 1498, the "pay to the order of" line had been changed to "Cash," and the memo line read "for umpire money." Once again, Eppard insisted that she did not alter the check. *Page 6 
 {¶ 13} Although Eppard and her husband deposited $5,000 of the Little League's money into their personal account over a five-day period through check numbers 1497 and 1498, she was unable to verify her entitlement to any of the money. Her only explanation was that she "had made purchases and there were receipts to back up those purchases." According to Eppard, she could not produce any receipts, however, because they had been given to the Little League and had not been returned.
 {¶ 14} In our view, the jury reasonably could have found Eppard guilty of grand theft based on her act of writing checks 1497, 1498, 1501, and 1502 and having the proceeds of those checks placed in her own bank account.[1] The checks were written out of sequence for whole-dollar amounts, and two of them were altered with white-out. These facts undermine her argument that the checks were reimbursement for league-related expenses. Eppard's statement about her and her husband's entitlement to the money also was unsupported by any receipts. Although Eppard insisted the receipts were in the Little League's possession, the jury reasonably may have found her testimony lacking in credibility. In short, viewing the evidence in a light most favorable to the prosecution, we believe the jury reasonably could have found, beyond a reasonable doubt, that Eppard, acting with the purpose to deprive the Maumee Little League of property, knowingly *Page 8 
obtained control over property beyond the scope of the express or implied consent of the Little League, and that the value of the property was between $5,000 and $100,000. Accordingly, we overrule her first assignment of error.
 {¶ 15} In her second assignment of error, Eppard contends her conviction is against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 16} Here the evidence does not weigh heavily against Eppard's conviction. In support of her manifest-weight challenge, Eppard suggests that her conviction is inconsistent with her husband's acquittal. She also argues that the evidence was confusing and that "no receipts or records were offered into evidence." These arguments fail to persuade us that her conviction is against the weight of the evidence. The acquittal of Eppard's husband does not establish that her own conviction was improper. The State's evidence was stronger against Eppard, who as treasurer actually wrote the checks at issue. In any event, even assuming, arguendo, that the verdicts against Eppard and her husband *Page 8 
were irreconcilably inconsistent, inconsistent verdicts between co-defendants is not a sufficient reason for reversing a conviction.State v. Mounts (March 23, 1998), Brown App. No. CA97-02-007, citingUnited States v. Dotterweich (1943), 320 U.S. 277; see also Harris v.Rivera (1981), 454 U.S. 339, 345.
 {¶ 17} We are equally unpersuaded that any confusion at trial rendered Eppard's conviction a miscarriage of justice. Although she characterizes the prosecution's case as "smoke and mirrors," the State's evidence was relatively straightforward. The State presented evidence that, on a number of occasions, Eppard wrote checks to herself and her husband from the Little League account and deposited the money in the Eppards' bank account. The State argued that Eppard and her husband were not entitled to the money, pointing out that it exceeded their legitimate compensation for league-related work, that some of the checks at issue were written out of order and were altered, and that Eppard had no receipts showing that the checks were reimbursement for league-related expenses. In response, Eppard asserted that she inadvertently wrote the checks out of sequence, that she did not alter any checks, and that the Little League had possession of receipts that would justify the payments to her. In essence, then, the evidence raised issues of credibility and questions of fact for the jury to resolve. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered witness credibility, we cannot say that, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, we overrule Eppard's second assignment of error. *Page 9 
 {¶ 18} In her third assignment of error, Eppard claims the trial court erred in denying her request for funds to retain a forensic accountant. She contends her indigency prevented her from hiring a forensic accountant. She also asserts that a forensic accountant would have aided her defense by organizing the Little League's financial records and performing an income/expense analysis. According to Eppard, a forensic accountant could have demonstrated that she legitimately spent Little League funds and reimbursed herself.
 {¶ 19} "[D]ue process, as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article I
of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of its sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." State v. Mason (1998), 82 Ohio St.3d 144, 150, 1998-Ohio-370.
 {¶ 20} With the foregoing standards in mind, we find no abuse of discretion in the trial court's refusal to provide Eppard with a forensic accountant. In rejecting Eppard's motion for a forensic accountant, the trial court reasoned as follows:
 {¶ 21} "* * * The State has indicated that its case centers on fewer than ten (10) checks made payable to Defendant. The explanation for those funds is within defendant's knowledge not some expert. Defendant asserts that it may be helpful to know the status of the books when defendant took over the books, but that cannot explain the checks at issue, *Page 10 
written and drawn upon by defendant at a later date. Furthermore, the bank statements which have been shared by the State can be reconciled by a lay person and are not of a nature that require expert assistance. The Court notes the State has not retained an accounting expert." (Doc. #50).
 {¶ 22} Having reviewed the record, we cannot say the trial court abused its broad discretion in finding no particularized showing of the need for a forensic accountant. Despite the alleged disorganization of the Little League's financial affairs, the case against Eppard was relatively simple. As noted above, the State presented the jury with a number of checks that Eppard had written to herself and her husband. Some of the checks were written out of sequence and altered. All of the checks were for large, whole dollar amounts, casting doubt on Eppard's claim that they were reimbursement for expenses. The dollar amounts of the checks exceeded the Eppards' legitimate compensation for league-related work.
 {¶ 23} Eppard insists that she once had receipts justifying the payments to herself and that a forensic accountant could have helped establish this fact. We note, however, that no such receipts were presented at trial. Eppard told the jury that the receipts, which she allegedly turned over to the Little League, had disappeared and no longer existed. But if this assertion is true, we see little that a forensic accountant could have done for her. In the exercise of its discretion, the trial court reasonably could have determined that without the ability to review receipts and pair them with checks Eppard wrote to herself, a forensic accountant would be of limited value to her defense. *Page 11 
 {¶ 24} Eppard also argues that a forensic accountant could have helped her obtain receipts from vendors, proving that she made cash payments to them. But Eppard knew who the vendors were, and the trial court reasonably could have determined that she was equally capable of contacting them through her attorney. The central issue at Eppard's trial was one of credibility. The jury either believed or disbelieved her claim that she once possessed receipts to justify the checks at issue. A forensic accountant would not have assisted the jury in making this determination. Therefore, the trial court did not abuse its discretion in finding that such an expert was not reasonably necessary and in declining to expend public funds to hire one. Eppard's third assignment of error is overruled.
 {¶ 25} In her fourth assignment of error, Eppard argues that she received constitutionally ineffective assistance of trial counsel. In particular, she challenges her trial counsel's (1) failure to seek suppression of her videotaped interview with a detective at the police station, (2) failure to seek suppression of evidence obtained during a search of her home pursuant to a warrant, (3) failure to adequately cross examine Little League representative Ron Hoag and Maumee police detective Derek Sanderson, and (4) failure to prepare a defense.
 {¶ 26} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his or her conduct falls within a wide range of *Page 12 
reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the trial. State v.Cook (1992), 65 Ohio St.3d 516, 524. Reversal is warranted only when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.
 {¶ 27} Upon review, we find no deficient performance by Eppard's trial counsel. With regard to the lack of a motion to suppress, we find no reasonable probability that such a motion would have been granted. Eppard argues that after she signed a waiver of her rights at the police station, her attorney spoke to a detective on the telephone and asked the detective to "hold off" on questioning her until he arrived. Eppard also asserts that her attorney was denied access to her upon his arrival at the police station, despite the fact that he was vocal about wanting to see her. Even if these facts are true, however, they provide no basis for suppressing Eppard's statements to the detective. Eppard waived her rights before being interviewed by police, and her attorney could not invoke those rights on her behalf. See, e.g., State v. Williams (2003),99 Ohio St.3d 439, 444, 2003-Ohio-4164; Moran v. Burbine (1986),475 U.S. 412. Eppard cites nothing to establish that she ever personally asserted a right to remain silent or to have her attorney present during questioning. In any event, we also find no reasonable probability that the result of Eppard's trial would have been different if the taped interview had been suppressed. Eppard's statements to the detective were largely equivocal. After making statements *Page 13 
suggestive of guilt, she reversed course and insisted that she had been entitled to all of the money at issue. Moreover, the taped interview had little bearing on the primary evidence against Eppard, the checks discussed above. Therefore, we find no reason to believe Eppard would have been acquitted even if the taped interview had been suppressed.
 {¶ 28} Finally, Eppard cannot establish ineffective assistance of counsel because the absence of a motion to suppress her statements could be considered reasonable trial strategy. See State v. Parrish, Montgomery App. No. 21206, 2006-Ohio-4161, ¶ 49 (recognizing that "a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel"). As noted above, Eppard's statements during the videotaped interview were largely equivocal. She appeared sympathetic at times and offered to reimburse the Little League, while suggesting that any extra payments to herself were unintended. Even though the videotape did contain some statements that appeared inculpatory, defense counsel reasonably may have concluded that it was not particularly damaging and that it allowed the jury to hear Eppard's explanation at the time of her arrest. The fact that defense counsel initially filed and then dismissed a motion to suppress further supports an inference that counsel was pursuing a purposeful trial strategy.
 {¶ 29} We also find no reasonable probability that defense counsel could have obtained suppression of evidence found during a search of Eppard's house. On appeal, Eppard challenges the sufficiency of an affidavit in support of the search warrant. Unfortunately, Eppard has failed to identify where, if anywhere, in the record the affidavit is located, and we have been unable to locate it. Without reviewing the affidavit, we *Page 14 
cannot say it was insufficient to support the search warrant. In any event, we would find no ineffective assistance of counsel even if the affidavit were deficient. On appeal, Eppard concedes that "[n]othing relevant to [the] investigation was apparently seized" during the search of her home. (Appellant's brief at 8). Even without the search of her home, the State still could have presented the jury with the same Little League checks and bank records upon which it relied to convict her.
 {¶ 30} We are equally unpersuaded by Eppard's argument about defense counsel's cross examination of Hoag and Sanderson. Having read the trial transcript, we find no deficient representation with regard to counsel's cross examination and no reasonable probability that more vigorous questioning would have resulted in Eppard's acquittal.
 {¶ 31} We also find no merit in Eppard's argument that her attorney provided deficient representation when preparing her defense. Eppard contends her attorney should have called vendors and umpires as witnesses to support her claim that she paid them the money deposited in her bank account. One possible reason defense counsel may have decided against doing so, however, is that Eppard did not use the money at issue to pay the vendors and umpires. Therefore, on the record before us, we cannot say that the failure to call the witnesses constituted deficient representation. Eppard also argues that her attorney should have obtained complete bank and financial records showing that she used the funds at issue for legitimate, league-related purposes. Once again, however, on the record before us, it is not apparent that any such records exist. As a result, we cannot say defense *Page 15 
counsel provided deficient representation by failing to introduce them. Finally, Eppard contends her attorney should have attempted to prove her claim that she returned the Little League checkbook when she resigned as treasurer. We note, however, that Eppard wrote all of the checks at issue before she resigned. We find no reasonable probability that the outcome of her trial would have been different if it were established that she returned the checkbook. Eppard's fourth assignment of error is overruled.
 {¶ 32} In her fifth assignment of error, Eppard asserts that the trial court made erroneous evidentiary rulings that cumulatively deprived her of a fair trial. She first contends the trial court erred in allowing Hoag to testify "in a speculative manner that a theft had occurred." In the testimony at issue, Hoag questioned a $750 check to Mark Eppard for field maintenance. The check was dated November 24, 2002. Hoag testified that no field maintenance was taking place then and that he would have been paid earlier in the season. We find nothing objectionable about this testimony.
 {¶ 33} Eppard next complains about detective Sanderson's testimony that police found a small amount of marijuana and a pipe during the search of her home. Defense counsel did not object to this testimony, and we find no plain error. Eppard also argues that the trial court erred in allowing testimony about her and her husband's bankruptcy. The record reflects that Eppard initially mentioned filing bankruptcy due to the attorney fees she had incurred in this case. In response, the State elicited testimony from her establishing that her attorney fees had been only $3,900 and that she had other more substantial debts for home improvements that were discharged in the bankruptcy. *Page 16 
Particularly given that the State did not raise the issue first, we find no abuse of discretion in the trial court allowing brief inquiry into the bankruptcy issue. If nothing else, the fact that the Eppards were having financial difficulties supports an inference that they had a motive to steal from the Little League. Eppard also cites one example of what she believes was "a particularly lengthy period of badgering" by the prosecutor. Having reviewed the cited page, we find nothing objectionable. When her attorney objected, the prosecutor withdrew the question.
 {¶ 34} Eppard next argues that the prosecutor "systematically attempted to shift the burden of proof" to her. We disagree. When Eppard claimed that she had paid league-related expenses with her credit card, the prosecutor elicited an admission from her that she would have the credit-card statement to prove it. Likewise, when she claimed that there were receipts documenting expenses for which she reimbursed herself, the prosecutor inquired as to whether she had the receipts. Eppard explained that they had been turned over to the Little League. In addition, when Eppard claimed that she had paid certain vendors cash, the prosecutor asked whether she had contacted them to obtain receipts proving her assertion. We find nothing objectionable in the prosecutor's questions. "[T]he prosecution is entitled to comment on defense counsel's failure to offer evidence or to call witnesses other than the defendant."State v. Simpson, Montgomery App. No. 19797, 2004-Ohio-669, at ¶ 65, citing State v. Clemons, 82 Ohio St.3d 438, 452, 1998-Ohio-406; see alsoState v. D'Ambrosio, 67 Ohio St.3d 185, 193, 1993-Ohio-170; State v.Russell, Clark App. No. 2005-CA-32, 2006-Ohio-994, ¶ 23. *Page 17 
 {¶ 35} Eppard next contends the trial court erred in allowing the prosecutor to ask Steven Long, the attorney who attempted to contact her at the police station, whether he knew she had waived her right to counsel after her arrest. The question Long actually answered was whether he knew "if she ever requested an attorney while she was speaking with Detective Sanderson." Long responded that he did not know. We find no abuse of discretion in the trial court allowing this question and answer. Prior to being questioned by the prosecutor, Long had testified about how he became angry when police rejected his attempts to contact Eppard during her interview. In light of this testimony, it was reasonable for the prosecutor to ask Long whether he knew if Eppard had requested an attorney.
 {¶ 36} In a final argument, Eppard contends the trial court erred in admitting into evidence State's exhibits 12 and 14. On their face, these documents appear to be identical copies of Maumee Little League board meeting minutes from September 18, 2003. Janie Goodwin, a board member, testified at trial and recognized them as meeting minutes. The prosecutor questioned Goodwin about a statement in the minutes that the Little League checkbook was missing from two boxes of materials Eppard had returned upon her resignation. After ascertaining from Goodwin that minutes are adopted after being voted on by board members, the prosecutor used them to impeach her prior testimony on direct examination that Eppard had returned the checkbook with the other materials.
 {¶ 37} Eppard argues on appeal that the minutes should not have been admitted into evidence because no one identified them as records kept in the ordinary course of *Page 18 
business. Thus, she appears to be raising a hearsay objection under Evid. R. 803(6). Because Eppard never raised a hearsay objection at trial, however, that issue has been waived. Defense counsel's only objection when the State introduced the minutes into evidence was that they had not been authenticated. This argument lacks merit. Goodwin did identify the documents as "all Little League minutes." She also acknowledged bringing copies of the minutes to the prosecutor's office. Consequently, we conclude that they were sufficiently authenticated. Having reviewed the minutes, we also reject Eppard's argument that there was "a serious legibility issue" concerning one of the copies. Her fifth assignment of error is overruled.
 {¶ 38} In her sixth assignment of error, Eppard argues that prosecutorial misconduct deprived her of a fair trial. In particular, she contends the prosecutor asked irrelevant questions, admitted irrelevant evidence, attempted to shift the burden of proof, made snide comments, and obfuscated the facts. To prevail on her prosecutorial misconduct claim, Eppard must show that the prosecutor's conduct was improper and that it prejudiced her substantial rights. State v.Kelly, Greene App. No. 2004-CA-20, 2005-Ohio-305, ¶ 18. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Cornwell, 86 Ohio St.3d 560, 570-571,1999-Ohio-125, quoting Smith v. Phillips (1982), 455 U.S. 209.
 {¶ 39} The first matter raised by Eppard is the prosecutor's introduction of testimony that police found marijuana and a pipe inside her home. As noted above, defense counsel did not object to the questioning that produced this testimony. Failure to *Page 19 
object to alleged instances of prosecutorial misconduct results in the waiver of all but plain error. State v. Taylor, Montgomery App. No. 20944, 2006-Ohio-843, ¶ 83. In light of the substantial evidence against Eppard, we find no plain error here.
 {¶ 40} Eppard next contends the prosecutor engaged in misconduct by referring to her bankruptcy and expenses for certain home improvements. She also argues that the prosecutor improperly attempted to shift the burden of proof. In our analysis above, we concluded that the trial court did not abuse its discretion in allowing brief inquiry into the issues of bankruptcy and home improvements. We also concluded that the prosecutor did not improperly attempt to shift the burden of proof. On one occasion, the prosecutor even stressed to the jury that Eppard had "absolutely no burden of proof." Therefore, we find no prosecutorial misconduct.
 {¶ 41} We are equally unpersuaded by Eppard's claim that the prosecutor engaged in misconduct by attempting to obfuscate the issues. We find no support for this assertion. Finally, even if the prosecutor acted improperly by making occasional snide remarks or inappropriate comments, they were not pervasive enough or egregious enough to deprive Eppard of a fair trial. On one occasion, the prosecutor stated, in response to a defense witness's testimony, "That's your testimony today." On another occasion, when Eppard claimed she had possessed a receipt documenting a league-related expense, the prosecutor stated, "Of course you did." Defense counsel objected to this remark, and the trial court sustained the objection. Finally, when Eppard testified that there were numerous checks she had failed to "document," the prosecutor commented, "That's certainly *Page 20 
correct." The trial court again sustained an objection by defense counsel. We cannot say that these remarks deprived Eppard of her right to a fair trial, particularly given that the trial court sustained an objection to two of them. Eppard's sixth assignment of error is overruled.
 {¶ 42} Having overruled each of Eppard's assignments of error, we hereby affirm the judgment of the Lucas County Common Pleas Court. Costs assessed to appellant pursuant to App. R. 24
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Brogan, J., Wolff, J., and Fain, J., concur.
Brogan, J., Wolff, J., and Fain, J., of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3), Article IV, of the Ohio Constitution.
[1] In her reply brief, Eppard criticizes the State's reliance on the four checks discussed above to establish the sufficiency of the evidence to sustain her convictions. Eppard argues that the State should be required to prove a theft of at least $14,976, which was the amount of restitution ordered at sentencing. We find no merit in this argument. Eppard's convictions are supported by legally sufficient evidence if the State proved a theft of at least $5,000. See R.C. § 2913.02(A)(2) 
(B)(2). The four checks discussed above are sufficient to meet this threshold. Although the trial court ordered a higher amount of restitution at sentencing, Eppard expressly has declined to challenge any aspect of her sentence. *Page 1