OPINION
{¶ 1} Kenneth Edward Howell, Jr., appeals from his conviction and sentence in Montgomery County Common Pleas Court on charges of murder, attempted murder, improperly discharging a firearm into a habitation, and having a weapon while under disability.
 {¶ 2} Howell advances two assignments of error in which he challenges the trial court's rulings on various motions. First, he contends the trial court erred in overruling his motion to suppress and motion to dismiss. Second, he claims the trial court erred in overruling his motion to exclude evidence and motion for a mistrial.
 {¶ 3} For the reasons set forth below, we conclude that the trial court did not err in overruling Howell's motions to suppress and to dismiss. We also find that his no-contest plea waived his ability to challenge the trial court's rulings on the motions to exclude evidence and for a mistrial. As a result, the trial court's judgment will be affirmed.
 I. {¶ 4} Dayton police officer Vickie Stapleton responded to a call about a possible shooting at approximately 4:00 a.m. on January 19, 2002. When she reported to the scene, which was near Edwin C. Moses Boulevard and Germantown Street, she met Brian Prego. He reported that his brother had been shot and was dead. Stapleton drove Brian a short distance and saw an Oldsmobile crashed into a fence. The vehicle's windows had been shot out. Stapleton saw Brian's brother, Anthony Prego, dead inside the vehicle with a gunshot wound to the head. Brian told Stapleton that he and Anthony had been chased and shot at by individuals in a beige or gray Ford Taurus.
 {¶ 5} While Stapleton stood beside the wrecked Oldsmobile, officers Rodney Barrett and Timothy Gould arrived to provide assistance. Upon his arrival, Gould noticed another vehicle in a field approximately one-hundred yards away. Gould and Barrett ran toward this vehicle, which turned out to be a silver/gray Ford Taurus with heavy damage. As Barrett and Gould approached the Taurus, they saw appellant Howell and a second individual, Michael Williams, who appeared to be injured, walking away from the Taurus and toward railroad tracks. Although the officers shined their lights on the two men and announced their presence, Howell and Williams continued to walk away. The officers ultimately overtook the two men, however, and Barrett asked some routine questions about the accident. He then turned toward the Taurus to see if anyone else was inside. Upon doing so, he heard a "thunk" sound. Barrett immediately turned back and saw an object bouncing in a pile of rubble near the railroad tracks. Believing that the object was a handgun, the officers ordered Howell and Williams to the ground.
 {¶ 6} Stapleton and Sergeant Michael Pauley then approached the Taurus to assist Barrett and Gould. After Howell and Williams were handcuffed, Barrett found a loaded magazine for a nine-millimeter gun where he had seen an object bounce. He also found a loaded .40 caliber semi-automatic handgun within fifteen to twenty feet of the Taurus. Officers dispatched to the scene of the shooting subsequently found numerous spent bullet casings in the street. They also obtained a statement from a security guard, who reported seeing a male in one car hanging out of the front passenger window and shooting a gun at the car in front.
 {¶ 7} While Howell was in a police cruiser, officer John Soto obtained his name, date of birth, and social security number. Howell also volunteered that he had witnessed the accident and had stopped to help. Later that morning, detective Gary Dunsky met Howell at the police station and granted his request to use the restroom. Prior to questioning Howell, Dunsky informed him of his Miranda rights. Howell indicated that he understood those rights and executed a waiver form. He then proceeded to tell Dunsky three different stories about what had happened. Dunsky then left the interview room for a period of time. When he returned, Howell gave a fourth version of events and made a written statement about the incident. Dunsky also spoke with Williams following his release from an area hospital. Williams admitted driving the Taurus and firing shots at the Oldsmobile, but he denied that Howell, the passenger, had fired any shots. On January 24, 2002, Howell participated in two more interviews with other officers. On one of those occasions, he was advised of hisMiranda rights and waived them. On the other occasion, he was not so advised.
 {¶ 8} Following the shooting, the Oldsmobile and the Taurus were towed to a garage operated by Coffey's Towing. Police evidence technicians, detectives, and investigators examined the vehicles and photographed them. Storage fees were accruing, and the Dayton Police Department subsequently released its hold on the vehicles in accordance with its standard practices.
 {¶ 9} A grand jury indicted Howell on June 6, 2002, on one count of murder, one count of attempted murder, two counts of improperly discharging a firearm into a habitation, and one count of having a weapon while under disability. The counts included firearm specifications. Howell subsequently filed various motions, including a motion to suppress statements he made to police. Following an evidentiary hearing, the trial court overruled the motion in large part but sustained it insofar as it related to un-Mirandized statements Howell had made during one of his interviews on January 24, 2002. Howell also moved for dismissal of the charges against him on the basis that the State had acted in bad faith by allowing the Oldsmobile and the Taurus to be destroyed before a defense expert could inspect them. Following a hearing, the trial court overruled this motion.
 {¶ 10} On December 10, 2002, Howell waived his right to a jury trial on the charge of having a weapon while under disability. A jury trial commenced on the other charges. During the trial, Howell objected to the State's introduction of evidence about two black ski masks having been found in the back passenger area of Taurus. The trial court overruled the objection and denied Howell's motion for a mistrial based on the introduction of the evidence. After the trial court's ruling, Howell decided to enter no-contest pleas to all of the charges against him in exchange for dismissal of the firearm specifications and the State's agreement not to oppose concurrent sentences on some counts. The trial court accepted the pleas, found Howell guilty, and sentenced him to an aggregate term of thirty years to life in prison. This timely appeal followed.
 II. {¶ 11} In his first assignment of error, Howell claims the trial court erred in overruling his motion to suppress and motion to dismiss. With regard to the motion to suppress, his argument is three-fold. First, he contends that police lacked probable cause to arrest him without a warrant and that any statements he made while handcuffed in the back of the police cruiser should have been suppressed for that reason. Second, he argues that his statements to detective Dunsky at the police station on January 19, 2002, should have been suppressed because he was coerced into talking. Third, he asserts that his statements at a subsequent interview on January 24, 2002, should have been suppressed because he was not informed of his Miranda rights.
 {¶ 12} We find no merit in any of the foregoing arguments. "Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense." State v. Otte (1996),74 Ohio St.3d 555, 559 (citation omitted). In the present case, the trial court properly determined that police had probable cause to arrest Howell. According to officer Stapleton, Brian Prego told her that he and his brother had been chased and shot at by individuals in a beige or gray Ford Taurus. Shortly thereafter, officers Rodney Barrett and Timothy Gould saw a silver/gray Ford Taurus with heavy damage sitting in a nearby field. As they approached the Taurus, they observed Howell and Michael Williams, who appeared to be injured, continuing to walk away from the only nearby road after the officers shined their flashlights and announced their presence. The area in question was non-residential, the time was shortly after 4:00 a.m., and Howell and Williams were the only people in the vicinity. Upon reaching the two men, Barrett heard a "thunk" and saw an object bouncing in a pile of rubble near the railroad tracks. Under the circumstances, Barrett reasonably believed that the object was a gun, and he had probable cause to believe that Howell and Williams were involved in the car chase and shooting.
 {¶ 13} Contrary to Howell's argument on appeal, Williams' subsequent statement that he was the only shooter did not negate the existence of probable cause. Despite Williams' claim, police had discovered a loaded nine-millimeter magazine and a loaded .40 caliber handgun at the scene. This evidence supported a reasonable inference that two weapons were involved and, therefore, that both Howell and Williams had participated in the shooting. In addition, an eyewitness had reported seeing a male hanging out of the passenger window and shooting a gun at the lead car. Notably, Williams and Howell both had told police that Howell was the passenger. Thus, police had probable cause to believe that Howell was a participant in the shooting, notwithstanding Williams' assertion to the contrary.
 {¶ 14} With regard to the statements that Howell made while handcuffed in a police cruiser, we note that officer Soto asked only identifying information for administrative purposes. The potentially incriminating statements made by Howell regarding his reason for being at the scene were offered voluntarily and not in response to police questioning. As a result, Miranda warnings were not required.
 {¶ 15} As for detective Dunsky's interview at the police station, the record reflects that Howell knowingly, intelligently, and voluntarily waived his Miranda rights prior to making his statements. Contrary to Howell's argument on appeal, the record also fails to demonstrate that Dunsky coerced him into making incriminating statements. Howell's only argument in this regard is that Dunsky questioned him in the early morning hours despite the fact that he had been up all night. The record is devoid of evidence, however, to suggest that Dunsky actually deprived Howell of sleep or had reason to believe he was too tired to talk. Absent such evidence, we reject Howell's claim that Dunsky coerced him into talking. State v. Simpson,
Montgomery App. No. 19797, 2004-Ohio-669.
 {¶ 16} With regard to Howell's statements at a subsequent interview on January 24, 2002, the record reveals that two interviews occurred that day. One of the interviews was conducted by detective Mark Davis. Prior to this interview, Howell was not advised of his Miranda rights. Consequently, the trial court suppressed the statements that Howell made to Davis. The other interview was conducted by detectives William Elholz and Christine Beane. Before interviewing Howell, Elholz and Beane advised him of his Miranda rights and obtained a waiver. We see no basis for suppressing the statements made during this interview, and Howell offers no specific argument to persuade us otherwise. As a result, we find no error in the trial court's ruling regarding the interviews that took place on January 24, 2002.
 {¶ 17} The remainder of Howell's first assignment of error concerns the trial court's denial of his motion to dismiss. In support of his motion, Howell argued that the State had violated his due process rights by permitting the destruction of the Taurus and the Oldsmobile before a defense expert could examine them. Howell asserted that the State had acted in bad faith by not preserving the vehicles and had deprived him of the opportunity to locate possibly exculpatory evidence. In particular, Howell reasoned that an investigator might have located bullet holes or some other evidence indicating that the Prego brothers had fired at him and that he merely had returned fire in self defense. The trial court heard argument on the issue and overruled Howell's motion in an oral ruling on December 9, 2002.
 {¶ 18} Upon review, we find no error in the trial court's ruling. As an initial matter, we note that the vehicles were not destroyed. After the shooting on January 19, 2002, the Taurus and Oldsmobile were examined by various agents of the State and taken to a private storage facility were storage fees were accruing. Approximately two weeks later, the police department released its hold on the vehicles. In March, 2002, the Taurus was sold to an automobile recycler in Sparta, Kentucky. The Oldsmobile was sold to Atkins Towing in May, 2002. Prior to the release and sales, an attorney made an appearance on behalf of Howell but did not seek to examine either vehicle. Moreover, when the vehicles were released, the State had no reason to believe that self defense would be an issue because Howell denied shooting a weapon at all. Although defense counsel never examined the vehicles, the State provided a number of photographs through discovery.
 {¶ 19} In light of the foregoing facts, Howell has failed to demonstrate a due process violation based on the disposal of the Taurus and the Oldsmobile. In order to prevail on such a claim, a defendant must show that the State either (1) failed to preserve materially exculpatory evidence or (2) in bad faith destroyed potentially useful evidence. State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370. In order to be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." Id. Furthermore, "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," is not materially exculpatory.State v. Christian (Dec. 17, 1999), Montgomery App. No. 17824. When evidence is only potentially exculpatory, the destruction of such evidence does not violate due process unless police acted in bad faith. Id.
 {¶ 20} With regard to the first method of establishing a due process violation, the two vehicles had no apparent materially exculpatory value when they were released and sold. Although Howell claims examination of the vehicles may have supported a self-defense theory, when the vehicles were released he insisted that he had not fired a gun at all. As a result, police had no reason to believe that self defense would be an issue. In addition, the vehicles were only potentially useful, not materially exculpatory, because Howell argued that additional testing and examination may have uncovered useful evidence. Finally, the trial court noted that Howell was capable of obtaining comparable evidence by examining the photographs of the vehicles. Consequently, Howell cannot demonstrate that the police failed to preserve materially exculpatory evidence.
 {¶ 21} With regard to the other method of establishing a due process violation, Howell cannot prevail because the record does not reveal bad faith on the part of the State. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'"Franklin, supra, quoting State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145.
 {¶ 22} We find no bad faith in this case. After completing testing, the State released the vehicles from the private facility where they were being held and where storage fees were accruing. Although counsel had appeared on Howell's behalf, he made no attempt to inspect the cars prior to their release. After conducting its investigation, the State had no reason to hold the cars any longer. Following their release, the State provided Howell with photographs and examination reports pertaining to the cars. At Howell's request, the State subsequently located both vehicles for him. Although Howell complains that his investigator failed to obtain access to the cars, he did not raise this issue until shortly before trial and never obtained a subpoena. In any event, the State had no obligation to attempt to persuade the private owners of the vehicles to permit a defense investigator to inspect them. As a result, we find no bad faith on the part of the State, and we overrule Howell's first assignment of error.
 III. {¶ 23} In his second assignment of error, Howell contends the trial court erred in overruling his motion to exclude evidence and motion for a mistrial. These two motions concerned the introduction of evidence about the ski masks found in the Taurus after the shooting. Howell sought to exclude the evidence, arguing that its probative value was substantially outweighed by the danger of unfair prejudice. The trial court overruled the motion and also denied Howell's motion for a mistrial based on the introduction of the evidence.
 {¶ 24} Upon review, we find persuasive the State's argument that Howell's no-contest plea waived his ability to appeal the trial court's mid-trial evidentiary ruling and related denial of a motion for a mistrial. In reaching this conclusion, we agree with the Sixth District's analysis in State v. Benson (March 31, 1992), Wood App. No. 90WD102. Like Howell, the defendant inBenson pleaded no contest after receiving an adverse evidentiary ruling at trial. He then attempted to challenge the ruling on appeal. The Sixth District held that the no-contest plea failed to preserve the issue, reasoning:
 {¶ 25} "* * * [W]e find no authority that permits a defendant to appeal an evidentiary ruling made in a trial that was prematurely terminated by a no contest plea. To allow a defendant to plead no contest immediately following an adverse evidentiary ruling and then appeal that ruling, would be to permit a defendant to interrupt his trial at any time to pass questions as to the admissibility of evidence on to the court of appeals in the hope of prevailing and having the opportunity to start his trial over again."
 {¶ 26} We agree with the foregoing reasoning. In State v.Spahr (1976), 47 Ohio App.2d 221, 223, we recognized that "[a]n evidential ruling, prospective or otherwise, is never final until the trial is completed[.]" Thus, Howell's no-contest plea in the midst of trial did not preserve the trial court's evidentiary ruling on the ski masks for appellate review. As a result, we overrule his second assignment of error.
 IV. {¶ 27} Having overruled Howell's two assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
Wolff, J., and Young, J., concur.