OPINION
{¶ 1} Defendant-Appellant Michael Anthony Williams appeals from his conviction and sentence for Murder, Attempted Murder, two counts of Discharging a Firearm into a Habitation, and for Having Weapons Under a Disability, all with various firearm specifications. Williams contends that the trial court erred when it overruled his objection, based uponBatson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, to the State's use of a peremptory challenge to remove a minority juror; that the trial court erred when it denied his motion to dismiss, based upon the State's alleged destruction of exculpatory evidence; and that the trial court erred when it denied his motion for a judgment of acquittal, because there is insufficient evidence in the record to support his conviction.
 {¶ 2} We conclude that the trial court properly overruled Williams'sBatson objection, because the State proffered a plausible, non-discriminatory reason for exercising its peremptory challenge, and the trial court's finding that the reason proffered by the State was, in fact, the reason for the peremptory challenge, is not clearly erroneous. We further conclude that the trial court properly denied the motion to dismiss based upon the State's alleged destruction of exculpatory evidence, to wit: the car the defendant was in at the time of the charged offenses, because there is nothing in the record to suggest that the State acted in bad faith, and there is nothing in the record to establish that the car, which may still have been available to inspection by the defense, constituted, or would have yielded, exculpatory evidence. Finally, we conclude that there is evidence in this record from which a reasonable finder of fact could have found, beyond reasonable doubt, Williams to be guilty of all of the offenses and specifications of which he was convicted. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} At about 4:00 one morning in January, 2002, Brian and Anthony Prego, brothers, were waiting in a car for a friend. Williams drove alongside in a Ford Taurus, accompanied by Kenneth Howell, in the passenger seat. Someone in the Taurus — Howell, Williams, or both — opened fire on the Prego brothers. Brian Prego ducked, pushed the gas pedal, and took off, with the Taurus in pursuit. Both Brian Prego and an eyewitness who was not in either car saw the passenger in the Taurus perched in the window, shooting ahead into the car occupied by the Prego brothers. Attempting to lose the Taurus, which was gaining on him, Brian Prego went over some railroad tracks, lost control, and hit a fence-post. Brian Prego called 911.
 {¶ 4} Police arriving at the scene found Anthony Prego slumped in the front seat of the car the Pregos were in, dead of a gunshot wound to the head. A few hundred feet away, Williams and Howell were walking away from the Taurus, which had flipped and crashed into a pole.
 {¶ 5} In response to police questioning, Williams made the following statements: (1) he had been out the night before with Howell; (2) he was driving the Taurus; (3) he was armed with a 40-caliber Glock; (4) he shot at some people in a car maybe fifteen times; and (5) he didn't think Howell had a gun that night.
 {¶ 6} At trial, the State presented forensic evidence tending to establish that there were two guns, a Glock 40-caliber gun recovered at the scene, and a different gun, which was not recovered, that fired 9-millimeter ammunition. Spent casings from a 9-millimeter gun were found in the back seat of the Taurus, and Williams discarded a 9-millimeter magazine when police arrived at the scene.
 {¶ 7} Williams and Howell were tried separately. At his trial, Williams admitted driving the Taurus, but claimed that it was Howell who had done all of the shooting. He testified that he only chased the car with the Prego brothers because Howell threatened to kill him if he didn't. Paula Harris corroborated Williams on this point at trial, claiming to have been on the floor of the back seat in the Taurus when the shooting started. In rebuttal, a police officer who had interviewed Harris testified that she had denied having been in the car, claiming that she had not seen Williams or Howell that night. There was also testimony tending to show that the front seats in the Taurus were fully extended and reclined, leaving insufficient room in the back seat for a third occupant of the car.
 {¶ 8} Following a jury trial, Williams was convicted on all counts and specifications. From his conviction and sentence, Williams appeals.
 II {¶ 9} Williams's First Assignment of Error is as follows:
 {¶ 10} "The trial court erred in overruling the appellant's Batson
challenge based upon the prosecutor's use of peremptory jury strikes to eliminate minority jurors from the jury panel."
 {¶ 11} Although Williams addresses this assignment of error to the State's exercise of peremptory challenges to both prospective jurors Angela Miller and William Ward, the record does not reflect that prospective juror Miller is a member of a protected minority. When defense counsel made his Batson challenge during voir dire, it was on the ground that the State was removing the "only African-American on the jury." Miller was on the jury at the time, so presumably she is not African-American. There is nothing in the record to indicate what Miller's race is.
 {¶ 12} With respect to Ward, when Williams objected to the State's use of a peremptory challenge to remove him from the jury, the trial court inquired as to the prosecutor's motives for exercising the peremptory challenge. The prosecutor said that he did not want relatives of persons convicted of crimes sitting on a jury in a criminal case because "they were just too sympathetic." He also noted that Ward had not answered the question concerning relatives convicted of crimes when it was put to the venire as a whole, but only admitted that his cousin had been in and out of jail after being directly asked. Finally, the prosecutor noted that Ward would not look at him during voir dire. The trial court accepted this explanation:
 {¶ 13} "I am concerned that — and I did watch that Mr. Ward did not volunteer when the question was asked about family members or defendants — prospective jurors being convicted of a crime. As far as whether he looked at Mr. Levinson [the assistant prosecutor representing the State] or not, I didn't look that closely. He did not volunteer. I noted that at the time. It took Mr. Levinson's having to specifically ask him.
 {¶ 14} "The court in this particular case finds that there is enough of a race-neutral explanation that I am going to overrule your Batson
challenge, Mr. Lewis. He has stated a reason that was pretty objective out there. I saw it happen."
 {¶ 15} A challenge to the State's exercise of a peremptory challenge upon the ground of racial discrimination is a three-step process. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Then, the proponent of the challenge must provide a racially neutral explanation for the challenge. But the explanation need not rise to the level justifying a challenge for cause. Finally, the trial court must find, based upon all of the circumstances, whether the opponent has proved purposeful racial discrimination. Batson v. Kentucky
(1986), 476 U.S. 79, 106 S.Ct. 1712.
 {¶ 16} In this case, the argument centers around the third step. Essentially, the third step requires the trial court to determine whether the racially neutral explanation offered by the State was, in fact, the motive for the peremptory challenge, or whether racial discrimination played a part in the decision.
 {¶ 17} With respect to the second and third steps in the Batson
analysis, we have observed that:
 {¶ 18} "As we explained in [State v.] Nobles [(1995),106 Ohio App.3d 246], the issue when the prosecutor offers reasons for excluding a potential juror is whether the reasons are facially valid. The reasons need not be persuasive or even plausible. `Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' Nobles, supra, at 280,665 N.E.2d 1137.
 {¶ 19} "* * *
 {¶ 20} "Since the trial court's determination turns largely upon credibility, Nobles, supra, at 281, 665 N.E.2d 1137, its ruling is entitled to substantial deference and will not be disturbed unless clearly erroneous." State v. Jones, Montgomery App. No. 16123, 1997 WL 566159, at *2.
 {¶ 21} The Ohio Supreme Court has held that:
 {¶ 22} "Finally, step three asks whether, in light of all the circumstances, the state did, in fact, have a discriminatory motive for striking the juror. The burden of persuasion always stays with the opponent of the strike. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771,131 L.Ed.2d at 839. The trial court's finding is entitled to deference, since it turns largely `on evaluation of credibility.' Batson,476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21." State v.White, 85 Ohio St.3d 433, 437, 1999-Ohio-281, 709 N.E. 2d 140.
 {¶ 23} Applying these principles to the case before us, we have no difficulty in determining that when the trial court found that the State's proffered reason for exercising its peremptory challenge was, in fact, a racially neutral motive for doing so, its finding was not clearly erroneous.
 {¶ 24} Williams's First Assignment of Error is overruled.
 III {¶ 25} Williams's Second Assignment of Error is as follows:
 {¶ 26} "The trial court erred in failing to grant the appellant's motion to dismiss based upon the prosecution's destruction of exculpatory evidence."
 {¶ 27} Williams moved to dismiss the charges against him, based upon the alleged destruction of the Ford Taurus in which he and Howell were riding at the time of the alleged offenses. He contends that the trial court erred when it overruled this motion. This argument was made in connection with Howell's appeal from his conviction, and rejected by this court. State v. Howell, Montgomery App. No. 19708, 2004-Ohio-2423. We see no reason to depart from our reasoning in that opinion.
 {¶ 28} As noted in Howell, supra, the Ford Taurus was not destroyed. As noted in the trial court's decision denying the motion to dismiss, the Ford Taurus, at that time, "is in J's Auto Recycling, Route 1, Box 93, Sparta, Kentucky * * * and can thus be examined." The defense made no attempt to examine the vehicle.
 {¶ 29} In Howell's case, his argument was that he was shooting in selfdefense. Williams argues that his participation (at trial, he denied having fired any shots) as the driver of the Taurus was coerced by Howell's having threatened to kill him. Williams seems to be of the view that an examination of the Taurus would yield exculpatory evidence, presumably tending to show that Howell had threatened to kill him if he did not chase after the Prego brothers. We find it difficult to imagine how even a forensic examination of the Taurus of the quality regularly featured on the CSI television show and its spinoffs would have yielded exculpatory evidence along those lines.
 {¶ 30} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence." State v.Fuller, Montgomery App. No. 18994, 2002-Ohio-2055, citing Arizona v.Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281.
 {¶ 31} "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" Fuller,
supra, quoting California v. Trombetta (1984), 467 U.S. 479, 104 S.Ct. 2528,81 L.Ed.2d 413.
 {¶ 32} In the case before us, there is far less reason to believe that an examination of the evidence — the Ford Taurus in this case, a videotape of the traffic stop leading to arrest in Fuller — would have resulted in evidence useful to the defense. In Fuller the videotape was destroyed because it did not support the officer's version of the stop. In the case before us, the Ford Taurus was released to its owner (neither Williams nor Howell) in due course in order that it might be sold. We agree with the trial court that there is no indication in this record that the State acted in bad faith. Nor is there any reason to believe that an examination of the Taurus would have produced evidence useful to the defense. Needless to say, there is nothing in the record to indicate that the State could reasonably have been expected to realize that an examination of the Taurus would have had exculpatory significance at the time it released the Taurus to its owner.
 {¶ 33} Williams's Second Assignment of Error is overruled.
 IV {¶ 34} Williams's Third Assignment of Error is as follows:
 {¶ 35} "The trial court erred in failing to grant the appellant's motion for judgment of acquittal based upon insufficient evidence to convict."
 {¶ 36} As both parties note:
 {¶ 37} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus; see, also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 38} In arguing the sufficiency of the evidence, Williams relies upon the testimony of himself and Paula Harris, who allegedly was a back-seat passenger in the Taurus at the time of the shooting. According to both of them, Howell was the only person shooting from the Taurus, not Williams, and Williams only pursued the Prego brothers in response to Howell's threat to kill him if he did not give chase. Arrayed against this testimony is both forensic evidence that two different guns were fired from the Taurus, and the testimony of Brian Prego and Angel Wright, who lived in one of two apartments that were in the line of fire, that they heard two distinct kinds of gunfire, firing almost simultaneously.
 {¶ 39} Also arrayed against the testimony of Williams and Harris is Williams's admission, later recanted, to the investigating officer that he fired shots, and Harris's statement to the police, later recanted, that she was not with Williams and Howell that night.[1]
 {¶ 40} We conclude that when all of the evidence is viewed in a light most favorable to the State, there is evidence in the record that, if believed, would persuade a reasonable mind of Williams's guilt upon all of the charges and specifications, beyond reasonable doubt. Accordingly, Williams's Third Assignment of Error is overruled.
 V {¶ 41} All of Williams's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Wolff, JJ., concur.
[1] Harris's prior statement would only be admissible to impeach her trial testimony; but if her prior statement is credited, it effectively negates the entire burden of her testimony exculpating Williams.